**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

KEVIN STRODES,                                    :

                Petitioner,             :          Case No. 3:07cv476

       vs.                                     :          District Judge Thomas M. Rose
                                          Magistrate Judge Sharon L. Ovington

STUART HUDSON,[1] WARDEN,             :

                Respondent.           :

# REPORT and RECOMMENDATIONS[2]

     This matter is before the Court on Petitioner Kevin Strodes' petition to vacate or set aside sentence (Doc. #2); Respondent's answer/return of writ (Doc. #6); and the record as a whole.

## FACTUAL AND PROCEDURAL BACKGROUND/THE PARTIES' CLAIMS

     On the direct appeal from Petitioner's state criminal conviction underlying this matter, the Court of Appeals for Clark County, Ohio, set forth the following

---

     [1]Per Respondent's Return of Writ, "Stuart Hudson is the Warden at the Mansfield Correctional Institution, where Strodes is currently incarcerated," and thus is substituted as "the proper party respondent" (Doc. #6 at 1, n.1) in place of Wanza Jackson, originally named in the Petition.  (*See* Doc. #2 at 1).

     [2]Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

presumptively correct[3] findings of fact:

> As a result of Defendant's participation in a robbery and
> shooting during the early morning hours of September
> 2, 2004, at 821 Southfield Avenue in Springfield,
> Defendant was indicted on one count of murder, [Ohio
> Rev. Code §] 2903.02(B), and one count of aggravated
> robbery, [Ohio Rev. Code §] 2911.01(A)(1).  A firearm
> specification was attached to each charge.
>
> Defendant filed a[n Ohio] Crim. R. 12(C)(3) motion to
> suppress statements he gave to police.  The trial court
> overruled that motion following a hearing.
> Subsequently, Defendant entered into an agreement
> with the State to plead guilty to the murder charge.  In
> exchange, the State dismissed the firearm specification
> attached to the murder charge, the aggravated robbery
> charge, and two other pending cases: Case No. 05CR298
> and 05CR329.
>
> At the sentencing hearing before the trial court imposed
> sentence, Defendant asked to withdraw his guilty plea.
> Defendant claimed he did not understand how he could
> be convicted of murder when he is not the person who
> pulled the trigger.  After a hearing, the trial court
> overruled Defendant's motion to withdraw his plea.
> The trial court then sentenced Defendant to fifteen years
> to life.

*State v. Strodes*, No. 05CA0070, 2006 WL 1284643, at *1 (Ohio Ct. App. May 5,

2006).  (Doc. #6, Exh. 10 at 1-2).

---

[3]The state court's factual findings "shall be presumed to be correct," and Petitioner bears
"the burden of rebutting the presumption of correctness by clear and convincing evidence."  28
U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040
(1999).

Consistent with the foregoing findings, the record reflects that the agreement signed by Strodes at the time of his guilty plea specified that the murder count to which he was pleading carried a maximum penalty of 15 years to life imprisonment. (Doc. #6, Exh. 4 at 1). At his disposition hearing on May 13, 2005, however, Strodes moved through counsel to withdraw that guilty plea, claiming that the plea "was not knowingly [made] from his perspective," and that he "is adamant about his innocence." (Doc. #6, Exh. 24 at 5). The trial court then proceeded to hold a hearing on that issue, during which the following exchange took place between Petitioner and the trial judge:

> [STRODES]: Your Honor, I don't understand about how I'm being charged with murder; and I'd like to withdraw my plea 'cause I - - I don't understand what's going on right now.
>
> THE COURT: Have you had the opportunity to speak with your attorney about the felony murder rule and how it came to be that you were charged with this offense?
>
> [STRODES]: We have talked about it, but we haven't went over everything, and I just - - I just don't understand what's going on right now. I'm confused.
>
> THE COURT: Okay. Well, at the time of the plea, I asked you if you understood the nature of the charge to which you were pleading guilty and asked if you understood the facts that were put on the record; and you indicated that you did. Has something happened between then and now to make you confused about

-3-

that?

[STRODES]: Yes, sir.

THE COURT: What's happened in the meantime?

[STRODES]: I was confused about how I have to go to the Parole Board to be released and not just to be released, and I just - - just didn't understand having to do a life sentence.

THE COURT: Okay. So what I hear you saying is that you're having a problem understanding how you can be convicted of murder when you were not the person who directly pulled the trigger and killed somebody. Is that what you're saying to the court?

[STRODES]: Yes, sir.

THE COURT: Okay.

[STRODES]: I had no knowledge of what was going on at the time.

THE COURT: Okay. Is there anything else that you wanted to say to the Court?

[STRODES]: I didn't - - I didn't know what was going on at the time. I was selling drugs, and I was scared so I left. And I was - - I was intoxicated on Valiums and marijuana.

THE COURT: Okay. Thank you.

(Doc. #6, Exh. 24 at 7-9).

The trial judge thereafter observed that during plea negotiations, "one of

the sticking points on [Strodes] entering a plea was that he was very interested in receiving a definite sentence." (*Id.* at 11) Based on that knowledge, the judge inferred that Strodes "did have some understanding of the difference between a definite sentence and an indefinite sentence and that an indefinite sentence would mean that there was no date certain for his release and that . . . his release date would be subject to review by some other authority, the Parole Authority." (*Id.*).

After hearing testimony from Strodes' mother[4] that Strodes suffers from ADHD [Attention Deficit Hyperactivity Disorder] and has a history of "just not understanding, not being able to comprehend" things that he is told (*id.* at 11-15), as well as hearing arguments from both Strodes' counsel and the prosecutor (*id.* at 24-33), the trial judge concluded "that there is no reasonable and legitimate basis for the withdrawal of [Strodes' guilty] plea," and therefore overruled Strodes' motion to withdraw his plea. (*Id.* at 37; *see also* Doc. #6, Exh. 5 at 1-2). On May 17, 2005, the trial court formally entered Strodes' sentence to life in prison, with eligibility for parole after 15 years. (Doc. #6, Exh. 5 at 2; *see also* Doc. #6, Exh. 25 at 39).

---

[4]The hearing transcript discloses that although Strodes is "not [the witness's] biological son," she had "raised him since [he was] 11 months old," and she referred to herself as "his guardian." (Doc. #6, Exh. 24 at 12).

-5-

Represented by new counsel, Strodes then filed a timely appeal, presenting the following two assignments of error:

> The trial [c]ourt erred to Appellant's detriment when it denied the Appellant's motion to suppress.
>
> The trial [c]ourt erred to Appellant's detriment when it denied the Appellant's motion to withdraw his plea prior to sentencing.

(Doc. #6, Exh. 7). On May 5, 2006, the state appellate court affirmed the trial court's judgment. *Strodes*, 2006 WL 1284643, at *3. (Doc. #6, Exh. 10 at 8).

Proceeding *pro se*, Strodes timely appealed the appellate court's decision to the Ohio Supreme Court, raising two propositions of law substantively identical to those raised in the Court of Appeals. (Doc. #6, Exh. 11 at 3, 6). On October 4, 2006, the Ohio Supreme Court declined jurisdiction and dismissed Strodes' appeal "as not involving any substantial constitutional question." *State v. Strodes*, 854 N.E.2d 1092 [table], 2006 WL 2821686 (Ohio 2006). (Doc. # 6, Exh. 13).

On August 18, 2006, while his appeal to the Ohio Supreme Court remained pending, Strodes filed a *pro se* application to reopen his direct appeal in the Ohio Court of Appeals pursuant to Ohio App. R. 26(B), alleging "that his Appellate Counsel was ineffective" (Doc. #6, Exh. 14 at 2), and setting forth the following new assignments of error:

> I. The trial court erred by not conducting a competency

> hearing after Appellant[ ] and his mother testified that[ ]
> Appellant suffered from ADHD[ and] had problem[s
> with] understanding [the] proceedings before accepting
> his plea of guilty, in violation of his Sixth Amendment
> right to a jury trial.
>
> II. Trial counsel was ineffective for not turning in his
> arguments on [Appellant's] motion to suppress, [and] . .
> . was further ineffective for not objecting to the trial
> judge[ ] and the State prosecutor making mental
> determination of Appellant's competency to not
> withdraw his plea.

(Doc. #6, Exh. 14 at 4, 5). On September 27, 2006, the appellate court found that

Strodes had failed to demonstrate good cause for his untimely filing, and thus

denied his application to reopen. (Doc. #6, Exh. 16). Strodes filed another

application for reconsideration on October 10, 2006 (Doc. #6, Exh. 18), which the

appellate court denied on November 3, 2006. (Doc. #6, Exh. 19).

Strodes filed a timely appeal from that decision to the Ohio Supreme

Court, reiterating in his memorandum in support of jurisdiction essentially the

same two propositions of law set forth in his application to reopen, as recited

*supra*. (Doc. #6, Exh. 20 at 3, 4). On December 27, 2006, the Ohio Supreme Court

declined discretionary review. *State v. Strodes*, 859 N.E.2d 559 [table], 2006 WL

3804283 (Ohio 2006). (Doc. #6, Exh. 22).

On December 27, 2007, Strodes filed his petition in this Court, seeking a

writ of habeas corpus pursuant to 28 U.S.C. § 2254, and asserting the following

four grounds for relief:

> [1] Petitioner's 5th, 6th, and 14th Amendment rights of [sic] the United States Constitution were violated when his motion to suppress his coerced confession was denied.

> [2] Petitioner's 6th and 14th amendment rights of [sic] the United States Constitution were violated when his motion to withdraw his guilty plea prior to sentencing was denied.

> [3] Petitioner received ineffective assistance of appellate counsel when his appellate counsel failed to raise or address the issue that the trial court erred by not conducting a competency hearing after [P]etitioner[ ] and his mother testified that he suffered from ADHD[ ] and had a problem in understanding proceedings before accepting his plea of guilty, in violation of his 6th and 14th Amendment rights of [sic] the United States Constitution.

> [4] Petitioner received ineffective assistance of appellate counsel when his appellate counsel failed to raise or address trial counsel's ineffectiveness for not turning in his arguments on [his] motion to suppress[.] [C]ounsel was further ineffective for not objecting to the trial judge and the prosecutor making mental determination of [P]etitioner's competency to not withdraw his plea, and was further ineffective for not conducting a reasonable, adequate investigation into the seriousness of [P]etitioner's mental illness[, i]n violation of his 6th and14th [A]mendment rights of [sic] the United States Constitution.

(Doc. #4 at 2, 9, 12, 14-15).

In opposing Strodes' Petition, Respondent first argues that Strodes' third

and fourth grounds for relief, *supra*, have been waived, because Strodes procedurally defaulted those claims by failing to bring them before the state courts in a timely manner, and has not shown cause for that default.  (Doc. #6 at 7-9).  In addition, Respondent asserts that Strodes' first and third grounds for relief have been waived and lack merit under applicable law.  (*Id.* at 9-17). Respondent thus urges that Petitioner's petition should be dismissed.  (*Id.* at 17).

## APPLICABLE LAW

### The Antiterrorism and Effective Death Penalty Act ["AEDPA"][5]

A federal court may consider a state prisoner's petition for a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Under the AEDPA, a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits in state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  The phrases "contrary to" and "unreasonable application" have independent meaning:

> A federal habeas court may issue the writ under the
> "contrary to" clause if the state court applies a rule

---

[5]Codified in large part at 28 U.S.C. § 2254.  *See* Pub.L. No. 104-132, 110 Stat. 1214.

> different from the law set forth in . . . [Supreme Court]
> cases, or if it decides a case differently that we have
> done on a set of materially indistinguishable facts.  The
> court may grant relief under the "unreasonable
> application" clause if the state court correctly identifies
> the governing legal principle from . . . [Supreme Court]
> decisions but unreasonably applies it to the facts of a
> particular case.  The focus on the latter inquiry is
> whether the state court's application of clearly
> established federal law is objectively unreasonable, and
> . . . an unreasonable application is different from an
> incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002) (citations omitted); *see also Broom v. Mitchell*,

441 F.3d 392, 398 (6th Cir. 2006), *cert. denied*, 549 U.S. 1255 (2007).

"A decision is an 'unreasonable application' of clearly established Supreme

Court law if a 'state court correctly identifies the governing legal principle from

[Supreme Court's] decisions but unreasonably applies that principle to the facts

of [a] prisoner's case.'"  *Gray v. Moore*, 520 F.3d 616, 621 (6th Cir.) (quoting in part

*Williams v. Taylor*, 529 U.S. 362, 413 (2000)), *cert. denied*, ___ U.S. ___, 129 S. Ct. 216

(2008).  "An unreasonable application of federal law is one that is 'objectively

unreasonable' and not merely incorrect."  *Sinkfield v. Brigano*, 487 F.3d 1013, 1016

(6th Cir.) (citation omitted), *cert. denied*, 552 U.S. 961 (2007).

Where a state court has not articulated its reasons for rejecting a convicted

criminal's grounds for appeal, a federal court considering that individual's

subsequent habeas petition should "focus on the result of the state court's

-10-

decision" to determine whether that decision is contrary to or unreasonably applies clearly established United States Supreme Court precedent, or is based on an unreasonable determination of the facts in light of the evidence presented. *Harris v. Stovall*, 212 F.3d 940, 943 n.1 (6th Cir. 2000). Such independent review, while "not a full, de novo review of the claims," nonetheless "remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA." *Id.* at 943.

For purposes of habeas review, a state court's determinations of factual issues are presumed correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). That deference extends to the state court's credibility assessments, *see Seymour v. Walker*, 224 F.3d 542, 553 (6th Cir. 2000), *cert. denied*, 532 U.S. 981 (2001), and to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997). "Indeed, the presumption applies with particular force to credibility determinations, as the Supreme Court has ruled that such determinations receive 'special deference' from the federal courts." *Id.* (citing *Patton v. Yount*, 467 U.S. 1025, 1038 (1984)). The same presumption also applies to state appellate courts' findings of fact

made on review of the state trial record.  *Sumner v. Mata*, 449 U.S. 539, 546 (1981);

*Mason v. Mitchell*, 320 F.3d 604, 614 (6th Cir. 2003).

**Exhaustion/Procedural Default**

Before a federal court will consider a state prisoner's claims on habeas

corpus review, ordinarily he first must have exhausted the remedies available in

the courts of the custodial state.  28 U.S.C. § 2254(a); *see also Franklin v. Rose*, 811

F.2d 322 (6th Cir. 1987).  To be considered as having been fairly presented to the

state courts, a federal habeas claim must be based on the same facts and the same

legal theory raised before the state courts.  *Franklin*, 811 F.2d at 325.  Accordingly,

a federal habeas petitioner must have presented his claim to the state courts as a

federal constitutional issue and not simply as an issue arising under state law, in

order to have preserved that claim.  *Id.* (quoting *Koontz v. Glossa*, 731 F.2d 365, 368

(6th Cir. 1984)); *see also Prather v. Rees*, 822 F.2d 1418, 1420-24 (6th Cir. 1987).

If a defendant fails to present the state court reviewing his conviction with

his federal claims in accordance with that state's established procedural rules,

and if the final state court addressing that defendant's claims holds that such

procedural default precludes further consideration of such claims, the federal

courts also may not consider the merits of those claims.  *Wainwright v. Sykes*, 433

U.S. 72, 86-87 (1977); *Engle v. Isaac*, 456 U.S. 107, 125-29 (1982).  Such procedural

bars may be imposed for failing to follow state procedural rules during pretrial, trial, or on appeal.  *See id.*  Where a procedural default prevents a habeas corpus petitioner from presenting one or more of his claims to the state courts, then, he usually may obtain federal review of such claims only by demonstrating cause for the procedural default and actual prejudice resulting from the alleged constitutional error.  *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 129.  The United States Supreme Court has recognized "a narrow exception to the cause requirement" only in those cases implicating "fundamental miscarriages of justice" – *i.e.*, "where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense," and as to claims of capital sentencing error.  *Dretke v. Haley*, 541 U.S. 386, 393 (2004) (citing *Murray v. Carrier*, 477 U.S. at 496; *Sawyer v. Whitley*, 505 U.S. 333 (1992)).

When a state alleges that a federal habeas claim is precluded by procedural default, a four-part analysis is required.  *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  First, the district court must determine that the petitioner failed to comply with a state procedural rule that is applicable to the petitioner's claim.  *Id.* Second, the court must decide whether the state courts actually enforced the state procedural sanction.  *Id.*  Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which

the state may rely to foreclose review of a federal constitutional claim. *Id.* Once the court has determined that a state procedural rule was not complied with and that such rule constitutes an adequate and independent state ground, the petitioner then must demonstrate "cause" for his failure to follow the procedural rule and actual prejudice stemming from the alleged constitutional error. *Id*.

## ANALYSIS

### Petitioner's "Ineffective Assistance of Appellate Counsel" Claims

Respondent urges that Strodes' two claims alleging ineffective assistance of appellate counsel (*see* Doc. #4 at 12, 14-15, Grounds for Relief ##3 & 4) are not properly before this Court and must be dismissed. (Doc. #6 at 7-9). Applying the *Maupin* factors, *supra*, to those claims compels a conclusion that such claims indeed have been procedurally defaulted for purposes of federal habeas review.

The record demonstrates that Strodes first raised ineffective assistance of appellate counsel claims in conjunction with his application brought under Ohio App. R. 26(B) to reopen his direct appeal, which motion the state court of appeals received and filed on August 18, 2006. (*See* Doc. #6, Exh. 14). The applicable rule of Ohio appellate procedure specifically provides that an application to reopen a direct appeal based on a claim of ineffective assistance of appellate counsel "shall be filed . . . within ninety days from journalization of the appellate judgment,"

absent a showing of good cause.  Ohio App. R. 26(B).  The state appellate court's

judgment on Strodes' direct appeal, however, was entered on May 5, 2006, *see*

*Strodes*, 2006 WL 1284643; (Doc. #6, Exh. 10), more than 90 days before his motion

to reopen was filed.  The state appellate court explicitly relied on Rule 26(B)'s

stated time limit in dismissing Strodes's motion as untimely.  (*See* Doc. #6, Exh.

16) ("Having failed to demonstrate good cause for his untimely filing, Defendant's

application to reopen his appeal is denied.").

      The Sixth Circuit consistently has recognized that Ohio App. R. 26(B)

constitutes an adequate and independent procedural bar in non-capital cases.  *See,*

*e.g., Scuba v. Brigano*, 527 F.3d 479, 488 (6th Cir. 2007) (citing *Monzo v. Edwards*, 281

F.3d 568, 578 (6th Cir. 2002)), *cert. denied*, ___ U.S. ___, 129 S. Ct. 269 (2008).

Significantly, the United States Supreme Court also has confirmed that "an

ineffective-assistance-of-counsel claim asserted as cause for the procedural default

of another claim can itself be procedurally defaulted."  *Edwards v. Carpenter*, 529

U.S. 446, 453 (2000).  Because Strodes has not demonstrated cause for his

procedural default, his third and fourth grounds for relief have been waived and

must be dismissed.

**Petitioner's "Unknowing and Involuntary Guilty Plea" Claim**

      Respondent first argues that Strodes waived his asserted claims under the

Sixth and Fourteenth Amendments relative to his guilty plea (*see* Doc. #4 at 9-12, Ground for Relief #2) by failing to present to the state courts any federal claim regarding that issue.  (Doc. #6 at 12-13).  Respondent accurately observes that Petitioner's brief filed in the state court of appeals did not articulate any federal constitutional concerns related to his guilty plea, instead stating simply that "[t]he trial [c]ourt erred to [Strodes'] detriment when it denied [his] motion to withdraw his plea prior to sentencing."  (*See* Doc. #6, Exh. 7 at 4, 9-10).  The argument within that brief identified only a single Ohio decision as authority for Strodes' position regarding withdrawal of his plea.  (*Id.* at 10).  Moreover, the Ohio Supreme Court's decision as to the thwarted plea withdrawal in the case Strode cited – *State v. Xie*, 584 N.E.2d 715 (Ohio 1992) – involved the application of Ohio Crim. R. 32.1, not a federal constitutional analysis.  *See id.* at 718-20.

This Court agrees that, as presented to the state appellate court, Strodes' claim regarding his guilty plea did not alert that court to any federal constitutional claim purportedly implicated by the denial of his request to withdraw that plea.  As Respondent affirmatively asserts that the State "does not waive this default" by Strodes (Doc. #6 at 13), Strodes' claim on that basis does appear to be "not properly before this [C]ourt" (*id.* at 12), and thus is subject to dismissal.

-16-

Regardless of that procedural default, however, Strodes' claim challenging the constitutionality of his guilty plea also would fail on its merits.  A prisoner who has entered a guilty plea at trial and later attempts to attack his sentence collaterally through a federal habeas corpus action is limited to raising only the issue of whether his guilty plea was knowing and voluntary.  *See United States v. Broce*, 488 U.S. 563 (1989); *Tollett v. Henderson*, 411 U.S. 258 (1973); *Brady v. United States*, 397 U.S. 742 (1970); *Baker v. United States*, 781 F.2d 85 (6th Cir.), *cert. denied*, 479 U.S. 1017 (1986).  A plea of guilty that is voluntarily and intelligently made satisfies the requirements of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and such a plea serves as a valid waiver of a defendant's constitutional rights, including claims of constitutional violations that preceded the guilty plea.  *Brady, supra*; *Boykin v. Alabama*, 395 U.S. 238 (1967).

"*Boykin* does not require separate enumeration of each right waived and separate waivers as to each."  *Sparks v. Sowders*, 852 F.2d 882, 885 (6th Cir. 1988) (quoting *Fontaine v. United States*, 526 F.2d 514, 516 (6th Cir. 1975), *cert. denied*, 424 U.S. 973 (1976)).  A defendant need not consciously waive each potential defense relinquished by a plea of guilty.  *Broce*, 488 U.S. at 573. "'The standard was and remains whether the plea represents a voluntary and intelligent choice among the

alternative courses of action open to the defendant.'" *Sparks*, 852 F.2d at 885

(quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). In applying this standard,

the court must look at the totality of circumstances surrounding the plea. *Id*.

In considering Strodes' direct appeal, the state appellate court set forth a

presumptively correct summary of the factual circumstances relevant to Strodes'

guilty plea, as follows in pertinent part:

> Defendant's mother testified at the hearing held on
> Defendant's motion to withdraw his guilty plea, that
> Defendant has ADHD and has difficulty understanding
> and comprehending things. On cross-examination,
> however, she admitted that Defendant did not wish to
> plead guilty to an offense that carried a life sentence,
> preferring instead a definite sentence, and that he knew
> the difference. Furthermore, the facts of this case were
> reviewed with Defendant before he entered his plea, and
> he was adamant then, as is he now, that he wasn't
> involved in the robbery and shooting but was merely
> selling drugs. Defendant's mother acknowledged that
> even when Defendant is not taking his medication he
> needs for his attention deficit disorder, he remains
> capable of focusing and concentrating on things, like
> video games, for up to one hour.
>
> A review of the plea proceeding reveals that the State's
> recitation of facts on the record included an assertion
> that Defendant discussed with his two co-defendants
> robbing at least one of the people at this house because
> of the large amount of cash in their possession, which
> Defendant had discovered while selling drugs.
> Defendant told the trial court that he understood the
> facts the prosecutor recited into the record and the
> nature of the charge to which he was pleading guilty,

which the court had explained to him. Defendant further told the court that he understood the only sentence the court could impose was fifteen years to life.

In concluding that Defendant had failed to demonstrate a reasonable and legitimate basis for withdrawal of his guilty plea, the trial court noted that Defendant had no problem giving his full and undivided attention during the plea hearing. He listened to questions the court asked, and he responded appropriately. The court found no merit in Defendant's claims that he didn't understand what was going on during the plea hearing, and specifically didn't understand the potential sentence. The court pointed out that the delay during the plea negotiations in this case resulted from the fact that Defendant wanted a definite flat sentence, with a date certain on which he would be released, rather than a mandatory indefinite sentence of fifteen years to life, which put control of Defendant's release date in the hands of the Adult Parole Authority. Defendant clearly understood the difference, and he knew that the only sentence the court could impose on him was the indefinite sentence of fifteen years to life.

* * *

Defendant understood quite well the difference between a definite sentence, which is what he wanted, and the mandatory indefinite fifteen years to life that Defendant knew the trial court was required to impose on him. Furthermore, the recitation of facts at the plea hearing amply demonstrates Defendant's involvement in a plan to rob people at this house, where Defendant was selling drugs, which ultimately resulted in the death of the victim. Defendant told the trial court that he understood the facts and the nature of the felony murder charge to which he was pleading guilty.

*-19-*

*Strodes*, 2006 WL 1284643, at *2-*3. (Doc. #6, Exh. 10 at 4-7). That analysis adequately refutes any contention that Strodes' plea was not knowing and voluntary.

In declining to permit Strodes to withdraw his prior plea, the trial judge relied in part on his observations of Strodes' demeanor at the time of the plea hearing ("I was not even remotely concerned about [Strodes'] ability to pay attention during the previous plea hearing"); his perception that Strodes "was represented by competent counsel" at that hearing; and his impression that Strodes "knew exactly what the difference was between a definite sentence and an indefinite sentence" when negotiating the terms of his plea agreement. (Doc. #6, Exh. 24 at 34-36). This Court is constrained to accept the trial court's "implicit findings of fact" to that effect, deduced from "the trial court's ability to adjudge [Strodes'] demeanor and credibility." *McQueen*, 99 F.3d at 1310.

In addition, the record before us adequately supports the state court's finding that Strodes was aware both of the facts alleged against him and that the murder charge he faced carried a maximum sentence of 15 years to life in prison. Despite that understanding, Strodes entered a plea of guilty to the murder charge. (Doc. #6, Exh. 4). In return for that plea, the State dismissed numerous other charges – specifically, aggravated robbery, drug abuse, burglary, tampering with

evidence, and related firearms specifications (*see* Doc. #6, Exh. 23 at 3-4) – that could have increased dramatically the potential prison sentence confronting Strodes. In light of these facts, this Court finds that Strodes has failed to show that his plea was not knowingly and voluntarily entered, and agrees with the state appellate court's conclusion that Strodes, "after reflecting on the lengthy indefinite sentence up to life imprisonment that he was facing, . . . merely had a change of heart." *Strodes*, 2006 WL 1284643, at *3. (Doc. #6, Exh. 10 at 7). Accordingly, Strodes' habeas request based on the purported unconstitutionality of his guilty plea must be denied.

## Petitioner's "Unconstitutional Denial of Motion to Suppress" Claim

Finally, Respondent contends that Strodes cannot maintain a claim based on his stated first ground for relief – *i.e.*, that the trial court improperly denied his motion to suppress his putative confession – because he later entered a guilty plea. (Doc. #6 at 17). The state appellate court so held, finding that Strodes' "voluntary guilty plea waived the [suppression] error." *Strodes*, 2006 WL 1284643, at *3. (Doc. #6, Exh. 10 at 8).

In keeping with United States Supreme Court precedent, "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims

relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett*, 411 U.S. at 267. Having concluded, *supra*, that Strodes' guilty plea was knowingly and voluntarily made, this Court also concludes that Strodes' claim challenging the constitutionality of the trial court's prior decision on his motion to suppress must be dismissed.

The conclusions reached herein are not debatable by jurists of reason and do not otherwise present issues adequate to deserve encouragement to proceed further. Consequently, a certificate of appealability should not issue.

**IT THEREFORE IS RECOMMENDED THAT:**

1.    Petitioner Kevin Strodes' petition to vacate or set aside sentence (Doc. #2) be DENIED and DISMISSED in its entirety; and

2.    A certificate of appealability under 28 U.S.C. §2253(c) not issue; and

3.    This case be TERMINATED on the docket of this Court.

September 24, 2010                          ___s/Sharon L. Ovington___
                                                        Sharon L. Ovington
                                                        United States Magistrate Judge

## <u>NOTICE REGARDING OBJECTIONS</u>

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen (17) days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

-23-